UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'   JS-6

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Geoffrey Lyon<br>Michael Carlin | Amy Findley |

**Proceedings:**     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
(dkt. 19, February 27, 2015)

## I.    INTRODUCTION

Plaintiff Everett Pratt filed this action against his former employer, Delta Air Lines, Inc., and Does 1 through 10 ("Delta") in Los Angeles County Superior Court on December 5, 2013.  Dkt. 1.  Delta removed the action to this Court on February 3, 2014, on the basis of diversity jurisdiction.  Id.  Plaintiff alleges the following claims against Delta: (1) disability discrimination in violation of California's Fair Employment and Housing Act, Cal. Govt. Code § 12900, et seq. ("FEHA"); (2) failure to accommodate plaintiff's disability in violation of FEHA; (3) medical leave discrimination and retaliation in violation of the California Family Rights Act ("CFRA"), Cal. Gov. Code § 12945.2; (4) association discrimination in violation of FEHA; (5) retaliation for attempting to exercise and exercising rights in violation of FEHA; (6) failure to prevent discrimination in violation of FEHA; and (7) wrongful termination in violation of public policy.  Id.

On February 27, 2015, Delta filed the instant motion for summary judgment or, in the alternative, partial summary judgment on plaintiff's remaining six claims.  Dkt. 19.[1] Plaintiff opposed Delta's motion on April 20, 2015.  Dkt. 23.  Delta replied and filed evidentiary objections to plaintiff's declaration on April 27, 2015.  Dkt. 24.  On May 4,

---

[1] The parties stipulated to the dismissal with prejudice of plaintiff's fourth claim for association discrimination on November 24, 2014.  Dkt. 18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'   JS-6

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

2015, the Court held a hearing.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

Plaintiff Everett Pratt began working for defendant Delta Air Lines as a Customer Service Agent ("CSA") at Los Angeles International Airport ("LAX") in 1997.  Pratt Depo. at 46.[2]  Plaintiff held the CSA position until termination of his employment was recommended on August 13, 2013, and completed on August 21, 2013.  Findley Decl., Exs. R, T.  Delta's stated reason for terminating plaintiff's employment was his lack of reliability, and more specifically, excessive absenteeism.  Id., Ex. R.

Plaintiff worked as a CSA in Department 120 at LAX in the specific role of "ramp agent."  Beals Decl. ¶ 3.[3]  The primary responsibility of a ramp agent is loading baggage

---

[2] As a preliminary matter, the Court notes that in plaintiff's 306 page Statement of Genuine Disputes of Material Fact ("SGD"), he asserts that every single fact proffered by Delta is disputed.  See generally SGD.  The vast majority of these facts, however, are not actually disputed.  Instead, as Delta correctly points out, plaintiff uses the SGD "as a tool to provide additional argument as to why the uncontroverted facts identified by Delta should not support Delta's motion for summary judgment."  See Reply Statement of Uncontroverted Facts ("RSUF").  For example, Delta's fifth uncontroverted fact states, inter alia, that "during the final twelve months [of his employment], Pratt only worked on 109 days."  Defendant's Statement of Uncontroverted Facts ("DSUF") ¶ 5.  In response, plaintiff asserts the fact is "disputed" and sets forth evidence indicating that "in 2013, [plaintiff's] health and attendance were improving."  SDG ¶ 5.  That plaintiff's attendance was arguably improving does not render the fact of plaintiff's absences disputed.  Additionally, the parties' respective statements of fact omit many pertinent facts, significantly diminishing their utility to the Court.  In light of these deficiencies, the Court frequently cites directly to the record.

[3] Trisha Beals is an Administrative Performance Leader for Delta in Department 120 at LAX who has been employed by Delta since September 1977.  Beals Decl. ¶ 1.  Beals assumed this role in March 2011, and in that capacity is responsible for payroll, scheduling, hiring, managing employees, and station staffing.  Id. ¶ 2.  She is also responsible for counseling employees for policy violations.  Id. ¶ 5.  From August 2008

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**           'O'   JS-6

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

onto departing Delta aircraft and unloading baggage from arriving aircraft.  Id.  The job responsibilities of the ramp agent must be completed every day for every flight.  Id. When a ramp agent is absent from his scheduled shift, Delta replaces the agent by pulling an employee from another work area, requiring another employee to stay late or  arrive early, or calling an employee into work on their day off to cover the shift.  Id.

Delta's employee handbook, "The Way We Fly," contains a Reliability Policy. Blackmon Decl. ¶ 7.[4]  The Reliability Policy states that "regular and predictable attendance is an essential function of every job at Delta, so any record short of this may be considered a reliability problem which could warrant administrative (disciplinary) action."  Findley Decl., Ex. B (Reliability Policy) at 1.  Pursuant to the policy, employees are required to notify their immediate supervisor if they are absent or late to work for any reason, including personal illness.  Id.  The Reliability Policy also explains that Delta provides personal paid time ("PPT"), the purpose of which "is to provide continued pay for personnel in time of personal illness or injury for a limited period of time."  Id. at 2. Employees are required to contact Sedgwick Claims Management ("Sedgwick"), Delta's third-party administrator that handles employee leave, for any absence exceeding seven consecutive calendar days.  See id.

When an employee takes unscheduled PPT, his supervisor may require the employee to explain the absence and provide a doctor's note.  Id.  Such "unscheduled absences due to illness are considered in evaluating an employee's overall reliability record even when the employee provides medical certification [for the absence]."  Id. However, absences protected by state and federal laws, such as the Family Medical Leave Act ("FMLA") or the California Family Rights Act ("CFRA"), are not counted against an employee's reliability record.  Blackmon Decl. ¶ 7.  Delta also offers various paid and unpaid leaves of absence based on medical needs, personal needs, and military service.

---

through March 2011, Beals served as the Department Manager, Ramps Services for LAX. Id. ¶ 2.

[4] Lisa Blackmon is the Director of Human Resources for Airport Customer Service and Cargo Operations for Delta, a position she has held since September 2012. Blackmon Decl. ¶ 1.  In that capacity, Blackmon supports 25,000 employees and is responsible for overseeing disciplinary actions and terminations.  Id. ¶ 2.  Blackmon has been employed by Delta since 1989.  Id. ¶ 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'   JS-6

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

Lyon Decl.., Ex. 25.  An employee's reliability record is documented by his supervisors in an "Employee Journal" or "Employee Summary," which Delta uses to "document workplace interactions with each of its employees."  Beals Decl. ¶ 4.

Plaintiff was first counseled for absenteeism by Delta in 2000.  Findley Decl., Ex. E (March 31, 2000 Reliability Letter; May 11, 2000 Reliability Letter).  In May of that year, plaintiff was advised that his attendance was "below standard for a Delta employee."  Id.  In August 2001, plaintiff was placed on probation and admonished that his "excessive absences cannot continue."  Id., Ex., F (August 24, 2001 Probationary Letter).  In April 2002, Delta extended plaintiff's probation, because plaintiff's "attendance and reliability issues [had] not improved."  Id., Ex., G (April 4, 2002 Probationary Letter).   Plaintiff's attendance subsequently improved, but he was once again placed on probation in January 2005, since his attendance for the year 2004 was "unacceptable."  Id., Ex., H (January 3, 2000 Extension of Probation Letter).  The January 2005 letter further noted that plaintiff had been absent 24 days on 11 occurrences due to illness, and "of the 11 occurrences, 9 were in conjunction with your days off or weekends."  Id.  Plaintiff was taken off of probation in September 2005, but subsequently placed back on probation one month later for "not meeting Delta's standard in the area of attendance and reliability."  Id., Ex. I (October 8, 2005 Reinstatement of Probation Letter).

Plaintiff testifies that he was diagnosed with gastrointestinal ("GI") problems, the disability upon which plaintiff's claims are based, in 2006, but suffered from such problems possibly as early as 2000.  See Pratt Depo. at 206:20-24; 83:1-13.  Although the record is unclear, plaintiff testified that, between 2006 and 2009, he took intermittent FMLA/CFRA leave of approximately 6-7 days per month to manage his GI symptoms.  See Pratt Depo. at 84:9-11; 106:11-14.  From October 2009 through June 2011, plaintiff was on an extended medical leave of absence, approved by Delta.  Beals Decl. ¶ 8.  Twelve of these weeks were designated by Delta as approved FMLA/CFRA leave.  Id.  Plaintiff states that, in or around the 2006-2010 time frame, coworkers and supervisors referred to him as "whiteout," a reference to the fact that Delta would whiteout plaintiff's name on the work schedule when he was absent from work.  See Pratt Depo. at 101-104; Hargrove Depo. at 70-73 (acknowledging that he and others referred to plaintiff as "whiteout").  Plaintiff complained to an unnamed supervisor about the "whiteout" comments in 2008, SGD ¶ 44, and then it "kind of stopped," Pratt Depo. at 104:23-25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

In or around 2010, plaintiff avers that he complained to an unidentified manager that he was "receiving excessive criticism for medically necessary leaves." Pratt Decl. ¶ 14,

Upon plaintiff's return from his leave of absence in June 2011, plaintiff continued to suffer from GI symptoms and also continued to miss work. As documented in plaintiff's Employee Summary, plaintiff missed 23 days of work between June 2011 and August 2011, and received two verbal warnings as a result. Findley Decl., Ex. J ("Employee Summary"). In December 2011, plaintiff was absent for an additional 12 days, for which he was counseled in January 2012. Id. at 5-6; Beals Decl. ¶ 7. These December absences, however, were retroactively approved as FMLA/CFRA leave by Sedgwick. Employee Summary at 5. Delta proffers evidence indicating that this approval was inadvertent, since plaintiff had worked insufficient hours in the preceding 12 months to qualify for FMLA/CFRA leave. Beals Decl. ¶ 7. Further, plaintiff asserts that in early 2012, Trisha Beals told plaintiff that he lacked sufficient hours to take more intermittent medical leave. Pratt Depo. at 111. When plaintiff asked if there were any other options, Beals told plaintiff that he "didn't have any." Id.

On May 24, 2012, plaintiff received a "Written Coaching" from Richard Hidalgo, one of plaintiff's supervisors, which addressed absences occurring between March 2012 and May 2012, including an extended 35-day absence beginning April 1, 2012. Employee Summary at 5. During this extended absence, Beals attempted to contact plaintiff twice without success. Id.; Beals Decl. ¶ 10. Plaintiff called Beals on April 23, 2012, and informed her that he was under a doctor's care. Employee Summary at 5. Plaintiff subsequently submitted a medical release from his doctor, indicating that he should be excused from work from March 29, 2012 through May 20, 2012 for unspecified medical reasons, Opp'n Mot. Summ. J., Ex. 24 (May 20, 2012 email to Trisha Beals). These absences were again designated as FMLA/CFRA protected by Sedgwick. Beals Decl ¶ 11. Plaintiff was also absent between June 4 and June 18 2012, and these absences were likewise designated by Sedgwick as FMLA/CFRA protected. Employee Summary at 4. According to plaintiff's Employee Summary, Sedgwick notified Delta in June 2012 that plaintiff's 2012 absences had been mistakenly designated as FMLA/CFRA protected. Id.

On September 11, 2012, plaintiff received a "Corrective Action Notice-Reliability" from Beals. Id. at 3. In it, Beals admonished plaintiff for missing 15 days of work beginning on August 20, 2012, and reviewed plaintiff's May 24, 2012 Written Coaching

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'   JS-6

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

with plaintiff.  Id. at 3-4.  Soon thereafter, on October 8, 2012, plaintiff was verbally coached by another supervisor regarding his reliability, including two additional absences in September 2012.  Id. at 3.

On October 10, 2012, plaintiff asked to speak with Beals.  Id. at 3.  At this time, plaintiff advised Beals that he was "not well."  Id. at 3; Pratt Depo. at 259.  Beals documented this conversation, which is designated as a "Verbal Coach–Reliability" in plaintiff's Employee Summary, as follows: "[Plainitff] wanted to know if he went home sick would he be fired. . . . I advised [plaintiff] only he can decide if he is well enough to work, but advised if he remains at work he will be expected to satisfactorily perform his job responsibilities. [Plaintiff] advised he would go home due [to] not feeling well. I wished [plaintiff] to feel better soon."  Employee Summary at 3.

Soon thereafter in October 2012, plaintiff was hospitalized with pneumonia.  Pratt Depo. at 259.  At that time, plaintiff was diagnosed with HIV.  Id.  Plaintiff never informed his supervisors of this diagnosis.  Id. at 132.  Plaintiff did not return to work until January 2013.  Employee Summary at 3.  Nothing in the record indicates that these absences were designated as FMLA/CFRA approved by Delta.

On January 21, 2013, plaintiff received a Final Corrective Action Notice ("Final Notice").  Id. at 3. In the Final Notice, supervisor Kelly Hargrove admonished plaintiff for a safety incident that occurred on January 16, 2012, and stressed to plaintiff that his attendance had not improved since he was issued the September 11, 2012 Corrective Action Notice.  Id. at 2-3.

On June 18, 2013, plaintiff was counseled by Beals and another supervisor concerning his absences.  Id. at 1.  During that conversation, Beals asked plaintiff if he thought he was "well enough to make the necessary improvement [in his attendance] and he advised that he has a medical condition but feels fine now."  Id.  Further, Beals "stressed to [plaintiff] he may want to review his job responsibilities with his doctor; [plaintiff] stated he understood."  Id.  Beals also admonished plaintiff that he had accrued 45 additional absences since receiving his January 21, 2013 Final Corrective Action.  Id. Beals avers that these 45 absences did not include an additional 11 days of absences in March 2013, which were inadvertently designated as FMLA/CFRA by Sedgwick.  Beals Decl. ¶ 12.  On July 24, 2013, plaintiff received an additional verbal counseling for missing work on July 17, 2013.  Employee Summary at 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'   JS-6

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
| --- | --- | --- | --- |
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

Plaintiff was subsequently absent again from August 7, 2013 to August 12, 2013. Id.  On August 13, 2013, plaintiff's employment was officially suspended, and he was recommended for termination.  Id.; Findley Decl, Ex. R.  Plaintiff acknowledged his suspension in a written statement.  Findley Decl., Ex. P.  In it, plaintiff states that he is "having a lot of medical problems that make sick at time [*sic*]. . . . When I have some bad days when I'm sick I don't come to work because I feel it's not safe to come to work for myself and my work place.  I want to work and be a good employee.  My health gets in the way some time."  Id.

In recommending plaintiff's termination on August 13, 2013, plaintiff's supervisor, Charles Gould, indicated plaintiff's poor reliability as the reason.  Id., Ex R.  Gould noted that plaintiff had been absent 126 days in the past 12 months.  Id.  On August 14, 2013, Delta's Human Resources department agreed with Gould's recommendation, id., Ex. S (HR recommendation), and plaintiff's termination was ultimately approved on August 21, 2013, id., Ex. T (HR termination approval).  Plaintiff was given the option of resigning, but chose termination. See Id.

Finally, during his employment plaintiff asserts that he complained more than 20 times to unidentified supervisors, on unspecified occasions, about not being permitted to leave early to attend medical appointments.  See Pratt Depo. at 90-100.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v.Catrett,  477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324.  Summary judgment must be granted for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'   JS-6

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F. 3d 898, 902 (9th Cir.1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n. 3 (9th Cir.1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir.1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   ANALYSIS

As a preliminary matter, Delta specifically objects to several portions of plaintiff's declaration. Because the Court does not rely on the objected-to portions of plaintiff's declaration in deciding this motion, Delta's objections are OVERRULED as MOOT.

### A.   Plaintiff's Claims for Disability Discrimination, Failure to Accommodate, and Failure to Engage in the Interactive Process in violation of FEHA

Delta contends that plaintiff's claims for disability discrimination, failure to accommodate, and failure to engage in the interactive process in violation of sections 12940(a), 12940(m), and 12940(n) of FEHA, respectively, fail because plaintiff has not established that he was a "qualified individual with a disability." Mot. Summ. J. at 9. The Court addresses plaintiff's claims for violation of sections 12940(a) and 12940(m) together, and separately addresses plaintiff's claim for violation of section 12940(n).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'   JS-6**

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

**1.     Disability Discrimination, § 12940(a), and Failure to
        Accommodate, § 12940(m)**

    To establish a prima facie case of disability discrimination in violation of section 12940(a), a plaintiff must show that "(1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability." Nigro v. Sears, Roebuck & Co., 2015 WL 1591368, at *1 (9th Cir. Apr. 10, 2015) (quoting Faust v. California Portland Cement Co., 150 Cal. Rptr. 3d 729, 745 (Cal. Ct. App. 2007)). Likewise, to state a claim for failure to accommodate in violation of section 12940(m), a plaintiff must establish that he (1) has a disability under FEHA, (2) is qualified to perform the essential functions of his position, and (3) the employer failed to reasonably accommodate his disability. Scotch v. Art Inst. of California-Orange Cnty., Inc., 173 Cal. App. 4th 986, 1009-10, (2009) (citing Wilson v. County of Orange, 169 Cal. App. 4th 1185, 1192 (2009)). In asserting a claim for disability discrimination, "the Legislature has placed the burden on the plaintiff to show that he or she is a qualified individual under FEHA (i.e., that he or she can perform the essential functions of the job with or without reasonable accommodation)." Green v. State, 42 Cal. 4th 254, 260 (2007). "The showing required [for a claim of disability discrimination] is identical to that required for a cause of action for failure to reasonably accommodate." Nealy v. City of Santa Monica, 234 Cal. App. 4th 359, 378 (2015).

    Delta contends that plaintiff has not established that he is a qualified individual, since he has not proffered evidence indicating he is able to perform the essential functions of the CSA position with or without a reasonable accommodation. Specifically, Delta argues that attendance is an essential function of the CSA position, plaintiff cannot perform this essential function, and plaintiff has not established the existence of a reasonable accommodation that would enable him to do so.

    In response, plaintiff does not expressly dispute that attendance is an essential function of the CSA position, instead arguing that Delta "carries the burden of proving [an accommodation] would result in an 'undue hardship' on the employer," Opp'n Mot. Summ. J. at 9, but "[n]owhere in its papers does Delta assert Pratt's leaves were or would become an 'undue hardship,' " id. at 11. In support, plaintiff cites the following language from Nunes v. Wal-Mart Stores, Inc.,164 F.3d 1243, 1247 (9th Cir. 1999): "Determining whether a proposed accommodation (medical leave in this case) is reasonable, including

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**        'O'   JS-6

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

whether it imposes an undue hardship on the employer, requires a fact-specific, individualized inquiry."

Plaintiff misstates the relevant law.  As the California Court of Appeal has explained, "[t]he question presented . . . is not whether [an accommodation] imposes an undue hardship, but whether the accommodation requested is reasonable and thus required in the first place." Raine v. City of Burbank, 135 Cal. App. 4th 1215, 1227 (2006); Nadaf-Rahrov, 166 Cal. App. 4th at 978 ("undue hardship . . . is an affirmative defense under the FEHA."). See also Green 42 Cal. 4th at 262 ("[P]laintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation.").  Moreover, Nunes did not hold that an employee asserting a disability discrimination claim under FEHA is excused from demonstrating that an accommodation is reasonable.  Rather, the Nunes court explained—in evaluating a claim brought pursuant to the ADA—that "[i]n the summary judgment context, a court should weigh the risks and alternatives, including possible hardships on the employer, to determine whether a genuine issue of material fact exists as to the reasonableness of the accommodation."  164 F.3d at 1247.  Consideration of the potential hardship to an employer in assessing the reasonableness of an accommodation does not alter the fact that, "as part of [his] prima facie case, [plaintiff] must establish []he was qualified to perform the essential duties of [his] job," Wills v. Superior Court, 194 Cal. App. 4th 312, 170 (2011), as modified on denial of reh'g (May 12, 2011), with or without a reasonable accommodation.

Accordingly, the relevant inquiry is whether plaintiff has proffered evidence that creates a triable issue of fact concerning his ability to perform the essential functions of the CSA position with or without a reasonable accommodation.  For the reasons set forth below, the Court concludes that plaintiff has failed to carry this burden.

### a.        Attendance Is an Essential Function of the CSA Position

By contending that Delta has not demonstrated that plaintiff's various leaves of absence "were or would become an 'undue hardship,' " Opp'n Mot. Summ. J. at 11, plaintiff in effect contends that attendance is not an essential function of the CSA position.  FEHA defines "essential functions" as "the fundamental job duties of the employment position. . . . 'Essential functions' does not include the marginal functions of the position."  Cal. Gov. Code § 12926 (f).  A function may be considered essential

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       **'O'   JS-6**

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|----------|------------------------|------|-------------|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

because, inter alia, "the reason the position exists is to perform that function."  Cal. Gov. Code § 12926 (f)(1)(A).

Here, Delta proffers undisputed evidence demonstrating that the reason the CSA position exists is to load and offload luggage onto aircraft.  Beals Decl. ¶ 3; see also, Pratt Depo. at 46:9 (affirming that CSA job responsibilities were to "Load/unload aircraft, handling luggage.").  Common sense dictates that an employee can only perform this function at the work site—i.e., where the luggage and aircraft are located.  Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012) ("Attendance may be necessary for a variety of reasons. . . . [for example, where the job] require[s] the employee to work with items and equipment that are on site.").  Indeed, in 2009, Delta issued, and plaintiff signed, a "Back to Basics–All Ramp Agents" memorandum, reiterating that ramp agents "are required to be on time, ready for work at the beginning of your shift," and emphasizing the importance of being "at [the] arrival gate no less than 10 minutes prior to ACTUAL Arrival Time [of an aircraft]."  Findley Decl., Ex. D.  It follows that attendance at work is essential to performance of the CSA position.  See Samper, 675 F.3d at 1237 ("[A] majority of circuits have endorsed the proposition that in those jobs where performance requires attendance at the job, irregular attendance compromises essential job functions"); E.E.O.C. v. Yellow Freight Sys., Inc., 253 F.3d 943, 949 (7th Cir. 2001) (affirming that attendance is an essential function of the job of a forklift driver).

Without citing any supporting legal authority, plaintiff appears to argue that, because there are "at least 450 CSAs who work for Delta at [LAX] . . . [whom] Delta would call to help fill Mr. Pratt's position when he is out," Opp'n Mot. Summ. J. at 4, workplace attendance is not an essential function of the CSA position.  Although it is true that an employer may demonstrate that a function is "essential because of the limited number of employees available among whom the performance of that job function can be distributed," Cal. Gov. Code § 12926(f)(1)(B), as discussed above, an employer may also demonstrate that a function is "essential because the reason the position exists is to perform that function," Cal. Gov. Code § 12926(f)(1)(A).  See Lang v. Astrue, 2011 WL 2149914, at *5 (S.D. Cal. June 1, 2011) (rejecting argument that "attendance is not a necessary function of [plaintiff's] position [as a Teleservice Representative with the Social Security Administration] because [plaintiff] is one of many individuals employed in the position and it is possible for other employees to fill in for [plaintiff] during any periods of absence.").  Delta has made this latter showing, and plaintiff has not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   **'O'   JS-6**

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|----------|------------------------|------|-------------|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

demonstrated that there is a triable issue of fact as to whether attendance is essential to a position that exists in order to service aircraft that are exclusively, and indisputably, located at the work site.

> **b.      Plaintiff's Proposed Accommodations Are Not Reasonable As a Matter of Law**

Under FEHA, a "reasonable accommodation" is "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." Nadaf-Rahrov v. Neiman Marcus Grp., Inc., 166 Cal. App. 4th 952, 974 (2008); Nealy, 234 Cal. App. 4th at 373 (same). To avoid summary judgment, a plaintiff must "show that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of cases." Dark v. Curry Cnty., 451 F.3d 1078, 1088 (9th Cir. 2006) (quoting U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401-02 (2002)).

Although it is not entirely clear, it appears that plaintiff suggests two potential accommodations: (1) that he be provided with an additional leave of absence or (2) that he be permitted to come to work only when his health permits. The Court addresses each accommodation in turn, and concludes that neither is reasonable as a matter of law.

> **i.      Provision of Additional Leave of Absence**

Plaintiff first argues that another leave of absence would have been a reasonable accommodation, since Delta offers job-protected leave and plaintiff's attendance was improving in the months before his termination. Specifically, plaintiff notes that he missed 211 days in 2011, 170 days in 2012, but only 69 days in 2013. Opp'n Summ. J. at 5. Plaintiff also indicates that he was released to work by his doctor on August 12, 2013, with no restrictions. Id.; Findley Decl., Ex. Q (August 12, 2013 doctor's note). According to plaintiff, Delta ignored his "radically improved medical condition and attendance." Id.

As plaintiff points out, the Ninth Circuit has explained that if a leave of absence "could have plausibly enabled a handicapped employee to adequately perform his job, an employer is liable for failing to attempt that accommodation." Humphrey v. Mem'l Hospitals Ass'n, 239 F.3d 1128, 1136 (9th Cir. 2001) (quoting Kimbro v. Atlantic Richfield Co., 889 F.2d 869 (9th Cir. 1989), cert. denied, 498 U.S. 814 (1990)). Under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL      'O'   JS-6

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

the circumstances of this case, however, plaintiff's evidence does not indicate that another leave of absence would have plausibly enabled him to adequately perform the CSA position—i.e., to attend work on a regular basis.

The cases upon which plaintiff relies in support of his arguments are instructive. First, plaintiff directs the Court to Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243 (9th Cir. 1999).  There, an employee who suffered from fainting episodes began an extended medical leave in March 1995, and her doctor indicated that she would likely be able to return to work by May 1, 1995.  Id. at 1245.  After May 1, various doctors provided Wal-Mart with proof that the employee was still suffering from fainting episodes, and indicated that she would be unable to return to work until November or December 1995. Id.  Wal-Mart terminated the employee in October 1995, while she was hospitalized.  Id. In reversing summary judgment for Wal-Mart, the Nunes court found that plaintiff had raised "a genuine issue of material fact as to whether her medical leave, projected to extend to November or December 1995, was a reasonable accommodation."  Id. at 1247. The court explained that "[t]he record indicates that Nunes was a good employee who had received 'above average' performance ratings," and that, at the time of her termination, she "was learning stress reduction techniques to control her symptoms."  Id. The court also noted that the employee "became a cashier at McDonald's beginning in April 1996 and has remained in that position ever since without any fainting incidents." Id. at 1246.

In stark contrast to Nunes, the instant record does not indicate that plaintiff  was a "good employee who had received above average performance ratings"—rather, plaintiff's employment history demonstrates that he struggled with attendance and reliability since 2000, warranting numerous written and verbal counseling actions, as well as probation.  Further, plaintiff proffers no evidence indicating that he was learning to "control his symptoms."  Although plaintiff relies on the fact that he was released to work without restrictions in August 2013, plaintiff testified that he never discussed any work restrictions with his doctor due to his illness.  Pratt Depo. at 438-39.  If plaintiff never had any illness-related work restrictions in the past, Delta had no reason to associate the lack of work restrictions in August 2013 with plaintiff's allegedly improving health. Moreover, unlike Nunes, plaintiff has not obtained new employment since his termination; rather, in February 2014, plaintiff applied for and began receiving state disability benefits.  Id. at 410-14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'   JS-6

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|----------|------------------------|------|-------------|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

Likewise, plaintiff cites <u>Jensen v. Wells Fargo Bank</u>, for the proposition that "[h]olding a job open for a disabled employee who needs time to recuperate or heal is in itself a form of reasonable accommodation and may be all that is required where it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future." 85 Cal. App. 4th 245, 263 (2000). First, <u>Jensen</u> is not on point. There, the reasonableness of "reassignment of an existing employee [was] the issue," not the reasonableness of additional leave. <u>Id.</u> at 266. More to the point, however, plaintiff proffers no evidence indicating that Delta had any reason to believe that additional leave would permit plaintiff "time to recuperate or heal," as discussed above.

Finally, <u>Dark v. Curry Cnty.</u>, 451 F.3d 1078, 1081-83 (9th Cir. 2006) is instructive. In <u>Dark</u>, a county road maintenance worker, who had suffered from epilepsy his entire adult life, was fired after he suffered a seizure on the job while driving. The employee did not dispute the employer's "judgment that the operation of heavy machinery is an essential function of the position." <u>Id.</u> at 1087. Instead, he proffered evidence indicating that "it was only a change in his medication that caused the . . . seizure." <u>Id.</u> Comparing the case to <u>Nunes</u>—where "an otherwise satisfactory employee suffered fainting spells on the job, and the employee sought a leave of absence in order to gain control over the condition"—the <u>Dark</u> court concluded that "there remains a genuine issue of material fact as to whether Dark could reasonably have been accommodated by his request for leave sufficient to permit his transition to new medication." <u>Id.</u> at 1090. In so doing, however, the court explained that "recovery time of unspecified duration may not be a reasonable accommodation (primarily where the employee will not be able to return to his former position and cannot state when and under what conditions he could return to work at all)." <u>Id.</u>

Here, plaintiff cannot articulate "when and under what conditions he could return to work at all." Unlike the employee in <u>Dark</u>, plaintiff proffers no evidence—and, importantly, proffered no evidence to Delta—indicating that additional leave would have enabled him to transition to a more effective treatment or medication. Simply put, there is no evidence in the record suggesting that additional leave would have helped plaintiff recover from his disability.

In sum, plaintiff has not demonstrated that there is a triable issue of fact concerning the reasonableness of his proposed accommodation of additional leave.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'   JS-6

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

### ii.    Permitting Flexible Attendance

In his opposition, plaintiff cites to an EEOC document titled "Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act," which indicates that "modifying workplace policies, including leave policies, is a form of reasonable accommodation." Opp'n Mot. Summ. J. at 14-15. Although the argument is somewhat unclear, plaintiff appears to contend that Delta could have reasonably accommodated him by permitting unlimited, disability-based absences. See, e.g., Pratt Depo. 74:23-75:3 ("Q: And my question is: What is that accommodation that you think should be provided to you? . . . THE WITNESS: Whatever necessary time is needed for my disability time off.").

As the California Court of Appeal recently reaffirmed, "FEHA does not obligate the employer to accommodate the employee by excusing him or her from the performance of essential functions." Nealy v. City of Santa Monica, 234 Cal. App. 4th 359, 375 (2015) (citing Liu v. City and County of San Francisco, 211 Cal. App. 4th 962, 985 (2012)). In Nealy, the court concluded that, in a job where the undisputed evidence demonstrated that heavy lifting constituted an essential function, restructuring that position to eliminate heavy lifting "is not a reasonable accommodation." Id.

The Ninth Circuit has likewise concluded that an accommodation that would eliminate an essential function of a position is not reasonable. In Samper v. Providence St. Vincent Med. Ctr., a neo-natal intensive care unit ("NICU") nurse sought an accommodation from her hospital-employer "that would have allowed her an unspecified number of unplanned absences from her job." 675 F.3d 1233, 1235 (9th Cir. 2012). The nurse, who was terminated in 2008 following eleven years of employment, suffered from fibromyalgia. Id. Although she was diagnosed with fibromyalgia in "at least 2005," the nurse "regularly exceeded the [permitted] number of unplanned absences," over the course of her employment. Id. Between 2005 and her termination, the hospital repeatedly permitted the nurse to, inter alia, rearrange her shifts and take medical leave. Id. at 1235-36. The nurse was ultimately discharged for, among other things, "general problems with attendance." Id. 1236.

In affirming the lower court's grant of summary judgment, the Samper court explained that "[i]t is a 'rather common-sense idea . . . that if one is not able to be at work, one cannot be a qualified individual.' " id. at 1237 (quoting Waggoner v. Olin

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'   JS-6

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

Corp. 169 F.3d 481, 482 (7th Cir. 1999)), and rejected the nurse's contention that "her proposed variation to the attendance policy constitutes a reasonable accommodation," id. at 1239. The court further concluded that variation to the attendance policy was not reasonable, "[e]ven under a fact-specific, individualized analysis of the accommodation," since the nurse "never quantified the number of additional unplanned absences she was seeking, even though she could have done so at any time during her years-long negotiating with the hospital over attendance." Id. The court continued:

> [Plaintiff's] request so far exceeds the realm of reasonableness that her argument leads to a breakdown in well-established ADA analysis. In most cases, the essential function and reasonable accommodation analyses are separate: first, a court inquires as to the job's essential functions, after which the plaintiff must establish that she can perform those functions with or without reasonable accommodations. []. [Plaintiff] essentially asks for a reasonable accommodation that *exempts* her from an essential function, causing the essential functions and reasonable accommodation analyses to run together. [Plaintiff's] approach would eviscerate any attendance policy, leaving the hospital with the potential for unlimited absences.

Id. at 1240 (emphasis in original).

The same is true in the instant case. It is undisputed that over the course of his 16-year employment with Delta, plaintiff was counseled repeatedly for attendance problems and was permitted to take many leaves of absence. Indeed, as plaintiff himself points out, in 2011, he was permitted to miss 211 days of work. Moreover, at no time did plaintiff quantify the number of additional unplanned absences he required, despite numerous opportunities to do so during counseling sessions. Although the Court recognizes the distinction in kind between the staffing needs of a NICU and an airport terminal, in either setting, work site attendance is essential and Delta "was under no obligation to give [plaintiff] a free pass for every unplanned absence." Id. at 1240.

Accordingly, the Court concludes that plaintiff has failed to raise a triable issue of fact concerning the reasonableness of his proposed flexible attendance accommodation.

In summary, plaintiff has failed to create a triable issue of material fact concerning his ability to perform the CSA position with or without a reasonable accommodation, as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'   JS-6

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|----------|------------------------|------|-------------|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

required to establish that he is a "qualified individual" within the meaning of FEHA. Because plaintiff has not carried his *prima facie* burden, the Court GRANTS Delta's motion for summary judgment on plaintiff's claims for disability discrimination in violation of section 12940(a) and failure to accommodate in violation of section 12940(m).[5]

## 2.     Failure to Engage in the Interactive Process, § 12940(n)

"Under FEHA, an employer must engage in a good faith interactive process with the disabled employee to explore the alternatives to accommodate the disability." Wysinger v. Automobile Club of Southern California, 157 Cal. App. 4th 413, 424 (2007) (citing Cal. Gov. Code § 12940(n)).  "FEHA requires an informal process with the employee to attempt to identify reasonable accommodations, not necessarily ritualized discussions." Nealy, 234 Cal. App. 4th at 379.

"To prevail on a claim for failure to engage in the interactive process, the employee must identify a reasonable accommodation that would have been available at the time the interactive process occurred." Id. (citing Scotch v. Art Institute of California, 173 Cal. App. 4th 986, 1018 (2009) and Nadaf-Rahrov, 166 Cal. App. 4th at 974).  As California courts recognize, "[a]n employee cannot necessarily be expected to identify and request all possible accommodations during the interactive process itself because [e]mployees do not have at their disposal the extensive information concerning possible alternative positions or possible accommodations which employers have." Scotch, 173 Cal. App.

---

[5] At oral argument, plaintiff argued that triable issues of fact exist concerning whether Delta based its termination decision solely on plaintiff's attendance in the year preceding his termination, whether defendant improperly counted FMLA/CFRA designated absences against plaintiff's attendance record, and whether defendant followed its internal policies related to employee leaves of absence.  None of these allegedly disputed issues is pertinent to plaintiff's *prima facie* showing for claims of disability discrimination and failure to accommodate—i.e., that plaintiff is a qualified individual who can perform the essential functions of the CSA position with or without a reasonable accommodation.  Although the Court is mindful of plaintiff's medical condition, the undisputed evidence demonstrates that plaintiff is not such a qualified individual.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

4th at 1018 (internal citations and quotations omitted).  However, "the employee should be able to *identify specific, available reasonable accommodations through the litigation process*, and particularly by the time the parties have conducted discovery and reached the summary judgment stage." Nealy, 234 Cal. App. 4th at  379 (citing Scotch, 173 Cal. App. 4th at 1019) (emphasis added).

As discussed at length above, plaintiff has identified two accommodations, neither of which is reasonable.  Moreover, although the record demonstrates that significant discovery has occurred in this case, plaintiff has not identified any other "specific, available reasonable accommodation," such as an alternate position with Delta that did not require regular, work site attendance.

Because plaintiff has not identified a reasonable accommodation, there is no genuine issue of fact concerning plaintiff's claim for failure to engage in the interactive process in violation of § 12940(n).  Accordingly, the Court GRANTS Delta's motion for summary judgment on this claim.

### B.   Plaintiff's Claim for Medical Leave Retaliation in Violation of the CFRA

Plaintiff asserts a claim for medical leave retaliation in violation of Cal. Gov. Code § 12945.2.  Although plaintiff's theory of liability is unclear, it appears that plaintiff contends that Delta denied him medical leave and otherwise discouraged him from taking medical leave.  See Compl. ¶ 42.

As is relevant here, Cal. Gov. Code section 12945.2(l)(1) provides: "It shall be an unlawful employment practice for an employer to refuse to hire, or to discharge, fine, suspend, expel, or discriminate against, any individual because of . . . [¶] (1) An individual's exercise of the right to family care and medical leave provided by subdivision (a)." "[T]he elements of a cause of action for retaliation in violation of [section 12945.2(l)(1) of the] CFRA . . . are as follows: (1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised [his] right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

suspension, because of [his] exercise of [his] right to CFRA leave." Dudley v. Dep't of Transp., 90 Cal. App. 4th 255, 261 (2001).

Defendant contends that plaintiff's claim fails because the undisputed evidence demonstrates that plaintiff was not eligible to take CFRA leave at the time of his suspension and termination in 2013. In order to be eligible for medical leave under the CFRA, an employee must have accrued "at least 1,250 hours of service with the employer during the previous 12-month period." Cal. Gov. Code § 12945.2(a). Here, Delta proffers evidence demonstrating that in the twelve month period preceding plaintiff's August 2013 suspension and termination, plaintiff worked only 671 hours. Beals Decl. ¶ 15. Plaintiff does not offer facts to dispute the number of hours worked. Instead, he contends that an employer is "estopped from alleging medical leave ineligibility when an employee has detrimentally relied on the employer's representations that the employee was eligible." Opp'n Mot. Summ. J. at 20. In so doing, plaintiff directs the Court to Delta's assertion that it "erroneously designated Pratt's leaves of several weeks at the end of 2012 and for several weeks around April 2013 as FMLA/CFRA protected leave." Id.

Plaintiff's argument misses the mark. That Delta designated weeks of leave taken by plaintiff in the 12 months preceding his termination as CFRA protected—erroneously or otherwise—does not render the number of hours worked by plaintiff in those preceding 12 months disputed. Because it is undisputed that, as of the date of his termination, plaintiff had not worked the requisite 1,250 hours in the preceding 12 months, he cannot establish that he was "an employee eligible to take CFRA leave." Accordingly, the Court GRANTS Delta's motion for summary judgment on plaintiff's claim for retaliation in violation of CFRA.

## C.    Plaintiff's Claim for Retaliation for Exercising Rights Under FEHA

Plaintiff alleges that Delta retaliated against him for exercising his rights under FEHA, in violation of section 12940(h). Section 12940(h) provides that it is an unlawful employment practice for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov. Code § 12940 (h). "To establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     **'O'   JS-6**

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

(3) a causal link existed between the protected activity and the employer's action." Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005). "Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action." Id. "If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation 'drops out of the picture,' and the burden shifts back to the employee to prove intentional retaliation." Id.

Delta contends that summary judgment is appropriate because plaintiff cannot make out a *prima facie* case. Although Delta concedes that termination is an adverse employment action, Delta asserts that plaintiff has not proffered evidence indicating that he engaged in protected activity within the meaning of section 12940(h) and, even assuming he has, that plaintiff's evidence does not establish the necessary causal link between his protected activity and his termination. Mot. Summ. J. at 17.

Plaintiff asserts that he engaged in two categories of protected activity for which Delta subsequently retaliated against him by terminating his employment in August 2013. First, he asserts that he complained to individuals at Delta about receiving criticism for his medically necessary absences as well as about not being permitted to leave work to attend doctor's appointments. Specifically, plaintiff testified that in or around 2008 he complained to an unidentified manager about being called "whiteout" by other employees, SGD ¶ 44, in or around 2010 he complained to an unidentified manager that he was "receiving excessive criticism for medically necessary leaves," Pratt Decl. ¶ 14, and on approximately twenty occasions of unspecified date he complained to managers about not being permitted to leave work early for medical appointments, Pratt Depo. at 99:19-100:23. Second, plaintiff contends that he was terminated "within days of taking 3 days of medical leave . . . [and] within three months of taking leave Delta itself designated as FMLA/CFRA job protected leave." Opp'n Summ. J. at 22.

"Protected conduct under section 12940(h) may take many forms." Rope v. Auto-Chlor Sys. of Washington, Inc., 220 Cal. App. 4th 635, 651 (2013), review denied (Jan. 29, 2014). "Although an employee need not formally file a charge in order to qualify as being engaged in protected opposing activity, such activity must oppose activity the employee reasonably believes constitutes unlawful discrimination, and complaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'   JS-6

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

Yanowitz, 36 Cal. 4th at 1047.  "Nonetheless . . . 'an employee is not required to use legal terms or buzzwords when opposing discrimination.' "  Id. (quoting another source). As is relevant here, California courts have found

> no support in the regulations or case law for the proposition that a mere request—or even repeated requests—for an accommodation, without more, constitutes a protected activity sufficient to support a claim for retaliation in violation of FEHA. On the contrary, case law and FEHA's implementing regulations are uniformly premised on the principle that the nature of activities protected by subdivision (h) *demonstrate some degree of opposition to or protest of* the employer's conduct or practices based on the employee's reasonable belief that the employer's action or practice is unlawful.

 Rope, 220 Cal. App. 4th at 652 (2013) (emphasis added).

The Court concludes that, as a matter of law, plaintiff's absences in June and August 2013—whether "job protected" or not—do not constitute protected activity within the meaning of section 12940(h).  As explained in Rope, the case law and FEHA's implementing regulations make clear that to be considered protected under section 12940(h), the employee's activity must "demonstrate some degree of opposition [] or protest."  There is nothing in the record to suggest that plaintiff's absences were a form of opposition or protest.  See also, Kelley v. Corr. Corp. of Am., 750 F. Supp. 2d 1132, 1144 (E.D. Cal. 2010) ("[E]very authority this court has reviewed that actually addresses the nature of the activities protected under Subdivision (h) indicates that the protected activity must have some element of express opposition to an action or policy or practice of the employer.").  Moreover, in concluding that requests for accommodation cannot constitute protected activity under section 12940(h), the California Court of Appeal explained that such "an interpretation of 'protected activity' . . . would significantly blur and perhaps obliterate the distinction between an action for failure to accommodate or engage in the interactive process and retaliation."  Rope, 220 Cal. App. 4th at 653 (quoting Kelley, 750 F. Supp. 2d at 1144).  This logic applies with equal force to the absences characterized by plaintiff as accommodations.

However, viewing the evidence in the light most favorable to plaintiff, the Court concludes that plaintiff's complaints to supervisors regarding being called "whiteout" and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       **'O'   JS-6**

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|----------|------------------------|------|-------------|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

otherwise receiving criticism for taking medical leave constitute protected activity within the meaning of section 12940(h).  At bottom, the relevant question in determining whether a complaint constitutes protected activity is "whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner."  Yanowitz, 36 Cal. 4th at 1047 (quoting another source).  Although it is a close call, a juror could conclude that these complaints put Delta on notice that plaintiff was complaining about medical leave or disability discrimination.[6]

Nonetheless, the Court concludes that plaintiff has not proffered evidence sufficient to create a triable issue of fact on the *prima facie* element of causation.  The only evidence that plaintiff proffers to demonstrate a causal connection between these complaints and his August 2013 termination is their purported temporal proximity.  See Rope, 220 Cal. App. 4h at 653 ("[A] close temporal proximity between an employee's resistance or opposition to unlawful conduct and an adverse employment action will support an inference that the action was retaliatory.").  However, plaintiff testified that he complained about being called "whiteout" in 2008 and complained about being receiving "excessive criticism" in 2010.  The three year gap between plaintiff's 2010 complaint and his August 2013 termination is not the sort of "temporal proximity" that permits an inference of a causal connection between the two events.  See, e.g., Loggins v. Kaiser Permanente Int'l, 151 Cal. App. 4th 1102, 1110 n.6 (2007) ("[W]e note the case law suggests the employer's action must follow 'within a relatively short time' [citation], and [plaintiff] cites no case holding that a nine-month hiatus between protected conduct qualifies as a 'relatively short time'. . ."); Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002) ("A nearly 18–month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of

---

[6] While the record unequivocally demonstrates that plaintiff complained to Delta about being called "whiteout" in or around 2008, the Court notes that the only evidence proffered by plaintiff concerning his 2010 complaint for "excessive criticism" and his undated complaints about being told he could not leave work for medical appointments is his own, uncorroborated testimony.  See Villiarimo v. Aloha Island Air, Inc., 281 F. 3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'   JS-6

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

causation.").[7]  Moreover, plaintiff has not specified *when* he complained about not being permitted to leave early for medical appointments.  Absent such evidence, there is no evidence of temporal proximity from which to draw an inference of causation.

Finally, to the extent that plaintiff appears to contend that his August 13, 2013 written response to his suspension and recommended termination—in which plaintiff stated that he "want[s] to work and be a good employee. My health gets in the way some time"—constitutes protected activity, "[l]ogic demands that any protected activity engaged in by a plaintiff that is the basis for a claim of retaliation must *precede* the defendant's retaliatory act." Kelley, 750 F. Supp. 2d at 1143 (emphasis in original). Even assuming this statement constituted a protected complaint, it did not post-date the recommendation for termination, which was indisputably made by plaintiff's supervisor on August 13, 2013, Findley Decl., Ex. R, and thus plaintiff's termination cannot constitute retaliation for that statement as a matter of law.

In summary, because plaintiff has not demonstrated that there is a triable issue of fact as to his *prima facie* showing of  a causal connection between any protected conduct and his termination, the Court GRANTS Delta's motion for summary judgment on plaintiff's claim for retaliation in violation of FEHA.

D.    **Plaintiff's Claim for Failure to Prevent Discrimination in Violation of FEHA**

Plaintiff asserts a claim for failure to prevent discrimination in violation of sections 12940(j) and (k) of FEHA.  "When a plaintiff seeks to recover damages based on a claim of failure to prevent discrimination or harassment []he must show three essential elements: 1) plaintiff was subjected to discrimination, harassment or retaliation; 2) defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and 3) this failure caused plaintiff to suffer injury, damage, loss or harm." Lelaind v. City & Cnty. of San Francisco, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008).

---

[7] What's more, as discussed supra, between the time of plaintiff's first complaint in 2008 and his ultimate termination in 2013, he was permitted to take FMLA/CFRA designated leave and otherwise miss substantial amounts of work, further undermining any causal connection between plaintiff's complaints and Delta's decision to terminate his employment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'   JS-6

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|----------|------------------------|------|-------------|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

However, "employers are not liable for failing to take necessary steps to prevent discrimination, 'except where the [discriminatory] actions took place and were not prevented.' " Dep't of Fair Employment & Hous. v. Lucent Technologies, Inc., 642 F.3d 728, 748 (9th Cir. 2011) (quoting Trujillo v. N. Cnty. Transit Dist., 63 Cal. App. 4h 280, 288 (1998)).

In his opposition, plaintiff correctly argues that his claim for "failure to stop discrimination is based on the same facts set forth in his individual discrimination claims. If any of those claims survive then his 'failure to stop' claim survives for the same reasons." Opp'n Mot. Summ. J. at 23. However, as explained above, the Court concludes that plaintiff's claims for discrimination fail.

Accordingly, the Court GRANTS Delta's motion for summary judgment as to plaintiff's claim for failure to prevent discrimination.

E.      **Plaintiff's Claim for Wrongful Termination in Violation of Public Policy**

A claim for wrongful termination in violation of public policy is a common-law claim judicially created by the California Supreme Court in Tameny v. Atlantic Richfield Co., 27 Cal. 3d 167 (1980). To prove a claim for wrongful termination in violation of public policy, a plaintiff must establish (1) an employer-employee relationship; (2) termination or other adverse employment action; (3) the termination or adverse action was a violation of public policy; (4) the termination or adverse action was a legal cause of Plaintiff's damages; and (5) the nature and extent of the damages. Holmes v. General Dynamics Corp., 17 Cal. App. 4th 1418, 1426 n.8 (1993).

Here, plaintiff's claim for wrongful termination in violation of public policy is "based on the public policies in each of his FEHA discrimination and retaliation claims." Opp'n Mot. Summ. J. at 24. Because plaintiff's claims for discrimination and retaliation in violation of FEHA fail, plaintiff's claim for wrongful termination in violation of public policy likewise fails. See Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 219 (1999) ("[B]ecause Hanson's FEHA claim fails, his claim for wrongful termination in violation of public policy fails."). Accordingly, the Court GRANTS defendant's motion for summary judgment as to this claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'   JS-6**

| Case No. | 2:14-cv-00815-CAS(JCx) | Date | May 4, 2015 |
|----------|------------------------|------|-------------|
| Title | EVERETT PRATT V. DELTA AIR LINES INC. ET AL. | | |

## V.    CONCLUSION

In accordance with the foregoing, the Court GRANTS defendant's motion for summary judgment in its entirety.

IT IS SO ORDERED.

|  | 00 | : | 10 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |